There's no room for a cup. Good morning. Good morning, Your Honor. May it please the Court, my name is Scott Claus from Dickinson Wright, and I represent Officer Ramirez. This appeal poses two essential questions for the Court. One, will it apply the plain terms of an immunity statute enacted by the Arizona Legislature? And two, will it recognize Officer Ramirez's right to qualified immunity from claims arising from discrete alleged conduct related to pat-down searches of the plaintiff? Well, something on the face of this, just obviously, the way that you define what happens within the scope of their legal duty, yes, the officer is at work, but is an officer entitled to personal immunity as long as the officer's duties place the officer in contact with the inmate? Let me give you an extreme hypothetical. If while escorting an inmate back to his cell, which would be part of the officer's job, an officer decides for no apparent reason to shoot and kill the inmate, well, they wouldn't have a gun in prison, they would, whatever, if they killed the inmate. Does the Arizona statute give the officer immunity? Yes, because... Even if it was like a first, it wasn't like, it's just because he was taken back to his cell. But let's say he had a personal vendetta against him, he planned the whole thing. Because it happened at work, he gets immunity? Yes, Your Honor. And if he raped someone because he's at work, it happens during the workday, he gets immunity? Yes, Your Honor, because the Arizona legislature has decided, and it is within the province of the Arizona legislature, according to the Arizona Supreme Court, to decide that the state is responsible for the tortious and or criminal conduct of employees of the Arizona Department of Corrections. That's why the way you frame the question, Your Honor, suggests that we are attempting to evade a situation where the plaintiff can seek redress. What about Arizona is part of this lawsuit, but they're not a part of this appeal, right? That is correct. So, it seems to me that the burden of your interpretation of the Arizona statute will fall on the state of Arizona. And have they offered any interpretation? It would have been nice to have a brief from them saying how they interpret the statute. The interpretation of the Arizona statute must be performed by this court according to the manner in which the Arizona courts dictate that a statute is to be interpreted, and that's by its plain language. But, Your Honor, again, this is not— Has Arizona interpreted this statute? It has not, Your Honor, which is why we suggested in footnote 2 to our reply that if the court believes that the plain language of the statute and the plain and categorical allegations of the complaint did not allow the court to determine that Officer Ramirez was acting within the scope of his legal duty during the course of this tortious conduct alleged in the second amended complaint, that it certify the question to the Arizona Supreme Court. The plain language is what we have to look at, right? Yes. And part of that says within the scope of the legal duty, right? Yes. Is it within the scope of the legal duty of an officer to force someone to perform oral sex on them? Your Honor, the question— It has to be no, right? I mean, it's not. The question, though, is whether the tortious conduct occurred within the scope of the legal duty. It's not whether the tort is within the scope of the legal duty because that would render the statute a nullity, and Arizona courts and this court is legion— Render it a nullity if you were doing a law enforcement officer and you're escorting someone to the cell and something happened and you were doing your job. That's part of the duty, but there's some things beyond the duty, isn't there? Your Honor, so long— Isn't there some things beyond the duty? The answer to your question is so long as the tortious or criminal conduct occurred while the officer was performing a legal duty, while the officer was engaged in the legal duty, then the answer is no, there— The scope has no meaning. Scope does have meaning, Your Honor. Scope means that the tortious conduct occurred because the corrections officer comes into contact with the victim as a result of performing the operations of a corrections officer. In fact, in this Second Amendment complaint, there are two counts of the Second Amendment complaint that expressly allege the existence of a duty. That duty existed not because Officer Ramirez had a duty as a reasonable man. The Second Amendment complaint makes clear that that duty existed because Officer Ramirez was acting as a corrections officer during the course of the— for the State, but are not an admission that Officer Ramirez was acting within the scope of his legal duties. And isn't it true that the plaintiff can allege in the alternative? Except that it's—the answer to your question, Your Honor, is yes, it is true that plaintiffs can make allegations in the alternative. What is false, Your Honor, is that these allegations were made in the alternative or that the allegations were made to establish respondeat superior liability. I'd like to turn Your Honor's attention to paragraph 71 of the Second Amendment complaint, which is on ER 65. ER 65 has at the top of the page a heading regarding a claim, quote, against Defendant Ramirez only, not against the State under a theory of vicarious liability. And in paragraph 71 on ER 65, the plaintiff alleges categorically that Defendant Ramirez was at all times hereto acting under the color of law in his capacity as a State of Arizona corrections officer, and his acts and omissions were conducted within the scope of his official duties or employment. So what you're talking about is the allegation for State action to make the 1983 claim. Right? So there's a lot of things in this complaint that the plaintiffs are dealing with. So I'm just going to tell you bluntly, I'm not very taken with your argument with respect to the allegations in the complaint. If you want to talk about that more and the other judges have questions, that's fine. But I would like to ask you about some other things that I think are more significant in the resolution of the case. Sure. May I answer your question, though, before? No. Actually, no. When I say I'm not really interested in it, I'm really not. So the statute uses the language within the scope of legal duty. And the district court's order said it was in the scope of employment. And I don't think that's something unique. I think you see that mixing of language in various cases, scope of employment, scope of legal duty. It seemed to me that the party's briefing recognized there's something different in those two terms. Would you agree with that, that those are two different legal standards? Yes, Your Honor. Okay. So what we have to look at is within the scope of legal duty. And your definition appears to be that if at any time they are within their work hours, essentially, then anything they do is within the scope of their legal duties. Correct? If the tort or criminal conduct occurred while the corrections officer was employed as a corrections officer, performing the duties as a corrections officer, then yes. And was at work, basically. During work hours, he was employed and he was at work. That's good enough. Yes. That makes everything that happens within the scope of legal duty. Yes, Your Honor. And the reason why. Now, if Arizona took that position, wouldn't they just say, okay, you win? We'll cover you on that? They're not taking that position, are they? This is not a question of indemnity, Your Honor. This is not an indemnity case like. But Arizona is not taking the same position that you're proffering, I'm assuming, in this litigation. Or you wouldn't be making these arguments to us, right? No, Your Honor. That is not correct. There has been no concession. There has been no. Though Arizona might interpret this statute to mean that anything that happens at work, they're responsible for. Yes, Your Honor. The issue is that because determining that Officer Ramirez is not subject to suit under Section 31-201.01F, because he was acting within the scope of his legal duty, does not render Ms. Goff without a remedy because the state is the appropriate party. And as the Supreme Court of Arizona recognized in Tripati, the statute determines who may be sued, not the particular tortious conduct that may be pursued. So what you are advocating would require us to conclude that basically no matter what an employee does during their work hours, and in this case the allegation is that this employee used the guise of a pat-down to sexually assault, sexually abuse an inmate. That's okay. You can sexually abuse coworkers, inmates, anybody, and you're within the scope of your legal duty. I mean, doesn't scope of legal duty basically mean what you were hired to do, what you're authorized to do while you're at work? I mean, there could be negligent conduct that could be within what you're authorized to do. But we're talking about out-and-out illegal conduct. How could Arizona possibly have hired people to commit crimes and say that's within the scope of your legal duty? Well, the Arizona court has said that criminal or tortious conduct can fall within the scope of legal duty. I'm going to unpack your question because it's assumed several questions. First, Your Honor, the way you constructed the question, again, seems to conflate the question of whether conduct falls within the scope of a legal duty with whether the conduct falls within the course and scope of employment because your question assumed whether a master expected the conduct to occur, and that gets into questions of agency and master-servant relationship. Those are inquiries that are appropriate in determining whether conduct occurred within the course and scope of employment. Here, though, the Arizona legislature, who is deemed to have been able to use the words course and scope of employment if it wished, but instead used the phrase scope of legal duty, did not make the expectations of the employer or the traditional notions of master-servant relationship the appropriate questions in determining whether scope of legal duty or whether a conduct occurred within the scope of legal duty. And the one thing that I would say, Your Honor, you said during your question, the complaint alleges a great many number of things. Here, and I would agree with you, here is one thing that the complaint does not allege. Though it alleges more than half a dozen times that Officer Ramirez was fulfilling his official duties while these tortious acts are alleged to have occurred, the complaint does not allege one single time that Officer Ramirez was acting outside of the scope of his legal duty. That would be an alternative pleading, and that is not the pleading that the court is faced with. I'd like to turn briefly, if I may, to qualify. Do you want to save any time for rebuttal? I would. I would like to save one minute, but I'd like to spend the next one minute and 25 seconds talking about the qualified immunity argument. And that gets to another question Your Honor asked, which is the complaint in paragraph 54, ER 63, does not allege, that is a characterization in the briefs, but the second amended complaint does not allege that Officer Ramirez used pat-downs as a guise to commit sexual assault. Instead, the complaint alleges in paragraph 54 that pat-downs that included touching Ms. Goff's breasts and other body parts were forcible sexual assaults. Well, but do you agree that an inmate's right to be free from nonconsensual sexual assault is clearly established? We've got Wood v. Beauclair and Schwenk v. Hartford, and so why wouldn't that extend to a transgender inmate? They would, Your Honor, except in neither Wood nor Beauclair was the court of appeals, was this court faced with whether a pat-down search in which body parts were touched constituted a sexual assault. Sexual assault is actually defined by Arizona law. Well, the case law we're talking about talks about sexual abuse. It's broader than just sexual assault. So you could violate a person's clearly established rights by sexual abuse. You don't have to commit a sexual assault as defined under Arizona criminal law. The second amended complaint alleges that the touching of Ms. Goff's breasts and other body parts during pat-downs constituted sexual assault. So while there may be a theoretical unit. I understand that, but what you were arguing in your brief is that that somehow meant that this wasn't a clearly established constitutional right. And I'm just frankly not buying a distinction that's that fine when the Ninth Circuit case law says it's a clearly established constitutional violation to sexually abuse an inmate. But there is no clearly established constitutional right, Your Honor. There is no case that says that a transgender inmate cannot be subjected to pat-down searches, and there is no. But that's not the allegation. The allegation was sexual abuse during either during a pat-down investigation, which I'm not conceding is correct, because they did use quotes around the word pat-down. It seemed that their allegation is this was in the guise of a pat-down that Officer Ramirez was using this opportunity to sexually abuse Ms. Goff. I disagree with you, Your Honor. Paragraph 54 says, after some time, Defendant Ramirez escalated his impermissible conduct to forcible sexual assault, MDASH, grabbing Ms. Goff's breasts and other body parts during pat-downs. So what you're arguing is it makes a difference whether it's a constitutional violation, whether it's sexual abuse of an inmate or sexual assault? No, Your Honor. Our argument is, and our argument for qualified immunity only relates to the pat-down searches. I mean, you weren't arguing that he could force an inmate to perform oral sex, and that was not a constitutional violation. You concede that was a constitutional violation. We're not. We did not argue that. We did not argue that below, and we're not arguing that here. And there's no suggestion that that's what we're arguing here. We are arguing a very limited qualified immunity because there is no clearly established right. Ms. Goff is housed in an all-male prison facility. Ms. Goff is housed in an all-male prison facility with male prison guards that are required by policy to conduct pat-down searches to protect from contraband and violence to other inmates. The pat-down search protocol requires the touching of breasts, buttocks, groin. It's required to do that pat-down search. There is no clearly established constitutional right. I don't think they're arguing that there was a constitutional violation because she was subjected to pat-down searches. They're saying that these the pat-down became sexual abuse, that it was more than just patting and touching. It was groping, you know, all sorts of things that I don't really want to go into in great detail, rubbing his body up against her, doing all sorts of things that are not that they're alleging are not part of a pat-down. And so their claim is not there was a constitutional violation because she was a transgender individual who was in a male facility and was subjected to a pat-down by a male officer. That's not the claim at all. We are not arguing that Mr. Ramirez, Officer Ramirez, is entitled to qualified immunity from the alleged rubbing up against Ms. Goff. We are very narrowly arguing that qualified immunity attaches to the allegation  that the word grope is not used in paragraph 54 or elsewhere with respect to pat-downs. The allegation and the only allegation with respect to pat-downs is that Officer Ramirez, quote, I'm quoting from their Second Amendment complaint, grabbed Ms. Goff's breast and other body parts during pat-downs. It is not clearly established. Grabbed. So you want a quibble of a groped or grabbed as one of them is okay in a pat-down and doesn't violate the Constitution and the other does? In fact, Your Honor, one of them is mandated by the policy promulgated by the Department of Corrections to prevent contraband and violence against other prisoners. An officer... The policy says grabbed? Yes or no? It says you should grab an inmate's breast. The policy says that the hands should go... Yes or no? It does not use the word grabbed. Okay. Do either of you have additional questions? No. All right. I'll give you one minute for review. Thank you, Your Honor. Thank you. Good morning, Your Honors. Good morning. May it please the Court. Sarah Moses for Respondent Angel Goff. With the Court's permission, I'd like to jump directly into the statutory immunity argument. There is no question here whether Mr. Ramirez forced Ms. Goff to perform oral sex on him. He has already pled guilty. He's been convicted on two felony counts. The question here is merely whether some blanket immunity exists, and a plain reading of the statute makes it clear that there is no such blanket immunity. We don't have any. Unfortunately, Arizona's not telling us how they interpret their statute, right? Well, that's not entirely true. You have the Howland case, which, granted, does not rule on subsection F, but does state in no uncertain terms that an inmate may sue a corrections officer in his or her individual capacity when the officer acts outside the scope of his or her legal duties. And I think there's a helpful framework in which to view some of the cases that have interpreted subsection F, because taking a step back, what must a statute like this apply to? What type of conduct? And to your point that you made previously, it can't apply to instances in which a corrections officer executes the duties that he or she is employed to perform flawlessly, because in that instance there would presumably be no liability. So you would concede that negligence performance of a duty, or maybe even grossly negligent performance, could be covered by the statute? Negligence, yes. But maybe even grossly? Well, one of the claims here is for gross negligence, so I don't want to concede that. But that's different than something where there's a mens re or a crime or something like that. Correct. Correct, because in that instance, why would the state of Arizona take on the mantle of liability when the actions of the corrections officer in no way further the state's aims? And so, as Your Honor mentioned, the question here is, was the officer engaged in conduct that he or she was hired to perform? And so if you look at the cases, on the one hand you have the Petty case, which is the case that the district court relied on. You also have the district court's order in the Marie case, also involving Mr. Ramirez. In both of those cases, the courts found that the corrections officer was engaging in conduct that he or she was not employed to perform. In Petty, that was sleeping through an inmate attack. The state of Arizona does not hire corrections officers to sleep through their job. In Marie, the district court found that Mr. Ramirez's sexual assault of another transgender inmate fell outside the scope of his legal duties. On the other hand, you have the Brinkman case, the Golic case, and the Swartz case. The Brinkman case, I believe, actually, Your Honor, Judge Beatty was involved in as a magistrate judge, although not on this substantive issue. In that case, you have a transportation case. A corrections officer is moving an inmate in the confines of the prison, but fails to provide the inmate with his inhaler, and the inmate has an asthma attack. The court holds that everything the officer did occurred in furtherance of her duty to manage and transport inmates. Similarly, in Golic, you have a corrections officer who forcefully walks an inmate out of a dining hall and slams him into a door. The court, again, held that transporting inmates is within the scope of the corrections officer's legal duties. Well, so isn't the pat-down different than the section? I mean, it's, they do have to be, you know, people do have to be patted down in prison. And big surprise, people actually have weapons in prison, they have drugs in prison, and all sorts of things. And so, they are going to have to be pat-downs. So, seeing that just because you're a transgender individual that you don't have to have a pat-down, I don't think that's ever going to go anywhere. And that is in no way Ms. Goff's claim here. If this case involved actual pat-downs that in some minor way went awry, then yes, perhaps the statute, subsection F, would apply. But Ms. Goff alleges that these were not pat-downs at all. These were sham pat-downs that were masquerading as, these were sexual assaults. There was grabbing Ms. Goff's breast, groping her, rubbing himself against her for his own sexual gratification. That is not a pat-down, it was merely an excuse to sexually assault Ms. Goff. So, I was trying to think of an analogy. So, the state has the obligation to provide medical care to the inmates. And in fact, if they don't, they can be liable for that. So, they have medical professionals on staff, and it would be within the doctor's duties to examine an inmate. But, would it be within the scope of their legal duty to, in the guise of examining an inmate, sexually assault them? During a medical examination? Yes. Of course not. What is the state possibly getting out of that? The question again here is, when is the state of Arizona willing to accept liability on behalf of a corrections officer? And in that sense, this is a qualified immunity type of statute. It's when is there, when is a corrections officer making a reasonable mistake within the scope of the duties that he or she was hired to perform? Well, your argument raises sort of an interesting strategic point that may not be dispositive, but I am curious. So, if the state of Arizona is your defendant, that's a big whale, right? They are not judgment-proof. Whereas, a former corrections officer who is now incarcerated or has already served time for felonies may be judgment-proof. So, if Officer Ramirez's counsel is correct, we would be interpreting the statute to provide more of a remedy for a plaintiff. Well, what I would argue on that front is that I think this goes back to the scope of employment versus scope of legal duty issue. And, ultimately, I don't want to get too bogged down on that question because I think it's easy to get lost in it. And, on a motion to dismiss, it actually doesn't matter because scope of employment, as the cases that Mr. Ramirez cites, is actually a question of fact for the jury, and that is what the Shalik case clearly holds. But, Ms. Goff would submit that it is not inconsistent to allege that Mr. Ramirez acted outside the scope of his legal duties in sexually assaulting and raping Ms. Goff, but also within the scope of his employment for purposes of vicarious liability against the state. And, in that way, one is a statutory interpretation question under subsection F, and one is an Arizona state common law interpretation of agency law. Now, admittedly, the inquiries might overlap in some respects, but we have to assume that the Arizona legislature would have used the phrasing scope of employment if it meant scope of employment. It meant something different. And so, we must rely on the cases that are interpreting subsection F, and those cases make clear there are two buckets of cases. The cases in which a corrections officer is executing imperfectly duties that he or she was hired to perform, and cases in which a corrections officer is executing duties that he was in no way hired to perform, and acting outside the scope of his legal duties. I'd like—oh, go ahead. Your opposing counsel suggested in a footnote, and then again reiterated the argument that we should certify a question to the Arizona Supreme Court. What is your position on that? There's absolutely no reason to certify this question because this is not a close case. This is not a hard decision. The question that would be certified to the Arizona Supreme Court would be, is raping an inmate within a corrections officer's legal duties? And the question to that is obviously no. It must be no. And if that isn't enough, all you have to turn to is the plain language of the statute, which includes the language within the scope of legal duties, and of course, we must interpret all parts of a statute to have meaning and not be superfluous. You have the Howland case, which is a published Arizona Court of Appeals opinion, which states that there is a right for an inmate to bring a personal cause of action against a corrections officer who acts outside the scope of his liability, and you have a great weight of persuasive evidence that all comes out to the same conclusion about whether or not these are duties that a corrections officer was hired to perform. And of course, Mr. Ramirez was in no way hired to perform the duty of sexually assaulting an inmate and forcing her to perform oral sex. I'd like to hit briefly on a couple of questions, a couple of issues that Mr. Claus brought up, the first being this question of qualified immunity and whether or not the pat-down searches, the sham pat-down searches, can be viewed in isolation of the rape allegations. And Ms. Goff would contend that the allegations cannot be parsed in this way. Ms. Goff alleges that Mr. Ramirez engaged in a single, continuous, and escalating pattern of sexual abuse that started with flirting, progressed to the assaultive pat-down searches that were not indeed pat-down searches at all, and culminated in rape. These allegations must be viewed as part of a larger pattern. They cannot be viewed in isolation in the way that Mr. Ramirez's argument requires. But secondly, even if the pat-down searches could somehow be viewed in isolation, Mr. Ramirez, as I think the Court hit on during the previous argument, mischaracterizes the constitutional right at issue for the second time before this Court. At SER 10, Mr. Ramirez characterizes the right at issue as there is no clearly established right for a person to be free from contact incidental to routine pat-down searches. But as the District Court correctly noted, Ms. Goff is not alleging routine pat-down searches. She is alleging sham pat-down searches that were, in fact, sexual assaults. On appeal, Mr. Ramirez has picked a new constitutional right. Now, he equates—he labels the constitutional right as there being no clearly established right for a transgender inmate housed in an all-male prisoner facility to be free from contact with all part of a prisoner's body during a pat-down. But of course, that is not the constitutional right either. The constitutional right shows up clearly in Ms. Goff's complaint at ER 65, paragraph 75, where she alleges Defendant Ramirez's actions and use of force as described herein, namely a series of coerced and nonconsensual sexual batteries, were objectively unreasonable and violated plaintiff's right. And that is the same constitutional right that the District Court identified here, and it's the same constitutional right that this Court found to be sufficiently particularized in Schwenk and reaffirmed in Beauclair when this Court said that sexual harassment of an inmate constitutes a violation of the Eighth Amendment. And finally, just briefly on this question of sexual assault under the statutory definition. Now, Ms. Goff alleges in her complaint that Mr. Ramirez grabbed her breasts and rubbed himself against her for his own sexual gratification. The District Court, presumably in shorthand, stated that plaintiff's specific factual allegations plausibly support the conclusion that Ramirez engaged in forcible sexual assault in violation of plaintiff's Fourth and Eighth Amendment rights. Now, the District Court did not hold that Mr. Ramirez engaged in sexual assault under any particular statute, let alone ARS 13-1406, nor does the holding rely on any particular statutory definition of sexual assault. Rather, the District Court held that taking the allegations as true, as it must on a motion to dismiss, Ms. Goff here had plausibly alleged that these sham pat-down searches were sexual assault or sexual abuse, if you want to call it that instead. And, in fact, Mr. Ramirez does not even identify the statute that does apply to corrections officers who engage in sexual misconduct, which is an entirely different statute, 13-1406, which identifies sexual misconduct from a guard as any completed, attempted, threatened, or requested touching of the genitals, anus, groin, breast, inner thigh, pubic area, or buttocks with the intent to arouse or gratify sexual desire. So, in considering the correct statute, if you need to consider a statute at all, which I don't believe that you do, Mr. Ramirez's conduct squarely qualifies as unlawful sexual conduct on the part of a corrections officer. And I think I have about a minute left. I'm happy to answer any questions. I don't think we have any questions. Okay. Thank you so much, Your Honors. Thank you. Okay. Thank you, Your Honor. My colleague just quoted from S.E.R. 10, suggesting that we raised an argument for the first time on appeal, but did not read the remainder of S.E.R. 10, namely lines 5 through 6, where we argued below, quote, there is no clearly established right for a transgender inmate to be free from pat-down searches, end quote. That was responded to on S.E.R. 25 by Ms. Goff, and we argued in rejoinder that no case has established male to female transgender inmates have a constitutional right to be free from a correctional officer touching their chest and other body parts during the course of pat-downs. I want to focus the remainder of my time on the qualified immunity issue. The complaint does not allege sham pat-downs. The complaint does not allege that Officer Ramirez acted outside the scope of his legal duty with respect to any of the conduct alleged in the second amended complaint. The question to be certified... You can wrap that, because you're in overtime now, and I gave you extra time, too, so you need to wrap. Thank you. And it's just to, the question was, what is the question to be certified to the Supreme The question is, because no court, including Halland, has answered the question, what does scope of legal duty mean as used within ARS section 31-201.01F, because there is no inferior Arizona appellate court that has answered that question, and the Arizona Supreme Court has not answered that question. Thank you. All right. Thank you both for your argument in this matter. This case stands submitted. The last case on calendar, Gabriel Martinez Olmos v. William Barr, 18-71826, was submitted on the briefs and is submitted as of this date. All right. This, the students, the law clerks will meet with you briefly. We're going to go conference on our cases, and then the three judges will come back out and talk, will speak with you, and this court as to legal matters is in recess until tomorrow morning at 9 o'clock. All rise.
judges: Callahan, Bade, Bough